## ERIE R. CO. v. FIRTH.
### No. 4347.

Circuit Court of Appeals, Third Circuit.
June 30, 1930.

Hobart & Minard, of Newark, N. J. (George S. Hobart, of Newark, N. J., George Gildea, of Trenton, N. J., and John E. Selser, of Newark, N. J., of counsel), for appellant.

Albert S. Woodruff and R. Wayne Kraft, both of Camden, N. J., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

BUFFINGTON, Circuit Judge.

In the court below, Howard C. Firth, a citizen of New Jersey, now deceased, recovered a verdict against the Erie Railroad Company, a corporate citizen of New York, for injury inflicted on him by a train of such railroad which struck a truck he was driving across its tracks. On entry of judgment thereon, the railroad took this appeal.

The testimony tended to show that the accident happened at a temporary private crossing over the four tracks of the railroad. It was built under a written agreement between the railroad and a contractor who was engaged in the construction of a state highway. The agreement provided that the cost of making the crossing should be at the expense of the contractor, subject to the supervision and approval of the railroad. The railroad placed its own watchman in charge of the crossing, his wages to be paid by the contractor. The plaintiff had a subcontract with the general contractor to furnish several trucks to carry material from a point about two miles distant from the crossing to a point on the opposite side thereof, where the material was to be dumped for the purpose of forming the new state highway the general contractor was building. The plaintiff had several employees who drove his trucks and he also drove one himself. He began working in December, 1928, and drove the truck over the crossing 30 or 40 times a day until the date of the accident. During all that time it was the custom for the watchman to warn the plaintiff and others of the approach of trains by giving signal with his hand. The accident occurred on the morning of February 16, 1929, a few minutes after the watchman went on duty. The plaintiff had passed over the crossing with his loaded truck, and, after dumping, started to return. On the trip over he observed the watchman standing in his shanty with a paper in his hand. The watchman had no flag or stop signal. On his way back he did not see the watchman. Plaintiff came to a stop 10 or 15 feet from the tracks and then proceeded slowly across the four tracks and without again coming to a stop. His truck was hit by a train approaching from his right on the third of the four tracks, which is known as the west-bound passenger track. All tracks were straight as far as an overhead Pennsylvania railroad bridge located about 800 feet from the crossing and for a considerable distance beyond.

A witness testified that as Firth started down the grade he saw the watchman at the shanty door; that the watchman was inside the door with a newspaper in his hand; and after the accident he saw him come out of his shanty and start toward the track. There was proof that there was fog so that one could not see the Pennsylvania railroad bridge when fifty yards away, and that one could only see about half the distance to it.

The plaintiff's testimony at the time of the accident was as follows: "I looked down to my left first and, of course, the bridge was on my left and I had to stop back so I could see down. They had a lot of boards down there and a lot of canvas flopping and flying back and forth. They had that up to keep the cement from getting froze, and I turned and looked to my right and I could see about 300 feet, maybe a little further, up the track, and I did not see anything and looked across the track and did not see any watchman, so I started across and when I got about in the center way I kept watching." He stated that no warning was given; that he could see just about as far as the Pennsylvania bridge, that is he could see the top of the bridge, but could not see a train going in or out under it.

On the part of the railroad, the watchman proved—and he was corroborated by the fireman on the engine—that he stood on the crossing and saw the train approaching and saw Firth come down grade to cross the tracks; that he called to him and beckoned to him to stop, but Firth came ahead in spite of the signal.

Under these proofs two underlying questions arose: First, whether there was evidence to submit to the jury on the question of negligence on the part of the railroad, or, on the other hand, whether the court should have given binding instructions in its favor. We are of opinion the question of the rail-

road's negligence was for the jury to decide. The crossing was a permissive one created by the railroad itself. Its purpose was to afford passage for vehicles engaged in the contractor's work. Manifestly a right of way was to be given to all those who. aided therein. The fact that the -plaintiff was a subcontractor and had no direct relation to or with the railroad is immaterial. Clearly it was the intent of the railroad to give all parties, whom the contractor procured to help in forwarding the work, passage across its tracks. To safeguard such persons in passing over its tracks the railroad selected its own watchman and controlled the crossing. While his wages were paid by the contractor, he was under the supervision and control of the railroad and was an employee for whose negligence the latter was answerable. No crossing signals were ordered given by the trains, and, judging from the practice of all parties concerned, the watchman was the sole warning agency the railroad provided. If the watchman's testimony was believed, he did his duty; he was standing on the crossing, saw Firth coming down the grade to the tracks, warned him in time, but Firth disregarded the warning and drove onto the tracks. On the other hand, there was testimony, that, as the train approached, the watchman was inside the watchbox; that he had a paper and was not attending to his duty and gave no warning to Firth. Manifestly, in the face of such conflicting proofs, it would have been error for the trial judge to have instructed the jury to find in favor of the railroad on the ground that there was no proof of its negligence. So also on the closely related question of the alleged contributory negligence of the plaintiff. In view of the fact of the watchman's customary warning practice at the crossing, his control of passage over it, the plaintiff seeing him at his post as he first crossed the tracks, of his stopping and listening and looking as he came back, and his having received no warning from the watchman, we cannot say that the plaintiff was guilty of contributory negligence in crossing the tracks when the omission of the watchman to give warning led him to believe a crossing could be safely made.

Without discussing in detail the other questions involved, all of which have been duly considered, we are of opinion no error was made. The charge was enlightening, fair, and properly submitted the several issues to the jury. While the verdict was heavy, yet the injuries suffered by the plaintiff were of such an unusually grievous nature as were calculated to make the case one of its own kind.

Finding no error, the judgment below is affirmed.